Barth A. Easton v. Commissioner. Joan F. Easton v. Commissioner. Suzanne E. Easton v. Commissioner. Vera H. Easton v. Commissioner.
Easton v. Commissioner
Docket Nos. 110974, 110975, 110976, 110977.
United States Tax Court
1943 Tax Ct. Memo LEXIS 465; 1 T.C.M. (CCH) 549; T.C.M. (RIA) 43063; February 5, 1943
*465 Willard L. Ellis, Esq., 615 Russ Bldg., San Francisco, Calif., for the petitioners. Harry R. Horrow, Esq., for the respondent. MELLOTT
Memorandum Findings of Fact and Opinion MELLOTT, Judge: Respondent determined deficiencies in the income tax of petitioners for the year 1936, as follows: Petitioner
Docket No.
Deficiency
Barth A. Easton
110974
$ 88.55
Joan F. Easton
110975
88.61
Suzanne E. Easton
110976
88.63
Vera H. Easton
110977
1,051.83 Only one issue is presented: whether the five-year period of limitation provided by section 275 (c) of the Revenue Act of 1936 is applicable. Findings of Fact Petitioners are residents of San Francisco, California, and filed their income tax returns for 1936 with the collector of internal revenue for the first district of California. On December 14, 1936, Barth A. Easton surrendered to Clayburgh Bros., Inc., a Nevada corporation, 60 shares of its preferred stock which he owned, and received from it the sum of $6,210. He filed his Federal income tax return for the calendar year 1936 on March 13, 1937, and reported therein gross income from the transaction in the amount of $946.80. Said amount was reported as a gain on *466 partial liquidation of the corporation computed as follows: Proceeds from redemption
$6,210.00
Less cost
5,263.20
Gain
$ 946.80 The gross income stated in the return was $2,210.86. On December 14, 1936, Joan F. Easton surrendered to Clayburgh Bros., Inc., 60 shares of its preferred stock which she owned, and received from it the sum of $6,210. She filed her Federal income tax return for the calendar year 1936 on March 15, 1937, and reported therein gross income from the transaction in the amount of $946.80. Said amount was reported as a gain on partial liquidation of the corporation computed as follows: Proceeds from redemption
$6,210.00
Less cost
5,263.20
Gain
$ 946.80 The gross income stated in the return was $2,226.37. On December 14, 1936, Suzanne E. Easton surrendered to Clayburgh Bros., Inc., 60 shares of its preferred stock which she owned, and received from it the sum of $6,210. She filed her Federal income tax return for the calendar year 1936 on March 15, 1937, and reported therein gross income from the transaction in the amount of $946.80. Said amount was reported as a gain on partial liquidation of the corporation computed as follows: Proceeds from redemption
$6,210.00
Less cost
5,263.20
Gain
$ 946.80
*467 The gross income stated in the return was $2,230.41. On December 14, 1936, Vera H. Easton surrendered to Clayburgh Bros., Inc., 182 shares of its preferred stock which she owned and received from it the sum of $18,837. She filed her Federal income tax return for the calendar year 1936 on March 15, 1937, and reported therein gross income from the transaction in the amount of $2,871.96. Said amount was reported in her return as a gain on partial liquidation of the corporation computed as follows: Proceeds from redemption
$18,837.00
Less cost
15,965.04
Gain
$ 2,871.96 The gross income stated in the return was $14,867.14. In (affirmed [appeal dismissed] ), several preferred stockholders of Clayburgh Brothers, who had received distributions in redemption of preferred stock owned by them, petitioned the United States Board of Tax Appeals to review a determination of the Commissioner made within three years after their returns were filed. They had reported the difference between the amount received and the adjusted basis as capital gain resulting from a distribution *468 in partial liquidation. In determining the deficiencies the Commissioner had eliminated this profit from taxable income and had included as dividends approximately 52 per cent of the amount received by each petitioner on the redemption of his preferred stock. The Board held that the distributions constituted taxable dividends under the provisions of section 115 (g) of the Revenue Act of 1936, to the extent of the earnings available therefor. This decision was promulgated on March 21, 1941. On February 12, 1942, respondent issued a notice of deficiency to each of these petitioners in which he determined that the amount received upon surrender of the preferred stock of Clayburgh Bros., Inc., was essentially equivalent to a dividend distribution to the extent shown in the following schedule: Barth A. Easton
$3,241.00
Joan F. Easton
3,241.00
Suzanne E. Easton
3,241.00
Vera H. Easton
9,804.02
In each notice of deficiency it is stated that the taxpayer had omitted from gross income the amount determined to be essentially equivalent to a dividend distribution, and, since the amount omitted was in excess of 25 percentum of the amount of gross income stated in the return for *469 the year 1926, that the tax could be assessed at any time within five years after the return was filed. Opinion Respondent's determinations may be upheld only if the evidence establishes that the five-year period of limitation provided for in section 275 (c) of the Revenue Act of 1936, rather than the three-year period specified in section 275 (a) of the same act, is applicable. This follows from the fact that the deficiency notices were not mailed to petitioners until February 12, 1942, whereas they filed their returns for 1936 on March 15, 1937. The pertinent provisions of section 275 are shown in the margin. [1]
*470 In , it was pointed out that section 275 (c) is an exception to the "general rule" providing for a three-year period of assessment as set forth in section 275 (a), and, inasmuch as respondent was relying upon an exception to a statute of limitations, that he had the burden of proving facts to establish such exception. In each of the present petitions it is alleged that the respondent erred in determining that the taxpayer, in his income tax return for 1936, omitted from gross income an amount properly includible therein, which was in excess of 25 per centum of the amount of gross income stated in the return, and that at the date of the mailing of the notice of deficiency the assessment of the taxes in controversy was barred by the provisions of section 275 (a). This allegation of error was denied by the respondent. Each petitioner showed in Schedule C of his or her return the cost of the preferred stock redeemed by the corporation and the amount received. The difference between the two amounts was reported as a short term capital gain on line 10 of each return. No evidence was introduced which would justify a finding that the distribution *471 made to each petitioner was essentially equivalent to a dividend distribution and taxable as such to the extent of the earnings and profits available at the time it was made. Respondent urges that his determinations are presumed to be correct and that the burden was on petitioners to prove facts to the contrary. In the Reis case, supra, a similar contention was answered in the following language: We are unable to conceive that the presumption of the correctness of a deficiency notice, which in the ordinary case the petitioner must meet, was intended by Congress to be used as a substitute for evidence in a case where the respondent has the burden of proof as here he has under the various cases first above cited. To adapt a classic to the case, the deficiency notice is a shield, not a sword. It is a defence where the petitioner has the onus of proof, not a weapon where the respondent has the burden. The respondent, under the theory he advances here, might with equal logic contend that he could escape the burden of proof of fraud in a case involving fraud, under section 293 (b), or the burden of proving that a return was "false and fraudulent * * * with intent to evade tax" *472 under section 276 (a), of the various revenue acts, merely by making a determination of fraud or fraudulent intent to evade tax. Yet, under all decisions he can not so escape his burden. The fact that the burden is in some instances placed upon the respondent by statute does not distinguish such cases from the instant matter. The burden is upon the respondent, whether by statute or the decisions above cited; he can not evade it by mere determination of the very facts upon which the Court must pass. In the instant proceedings respondent must show two facts: (1) that each petitioner omitted from gross income an amount in excess of 25 percent of the amount of gross income stated in the return; and (2) that the omitted amount was properly includible. No evidence such as that adduced in the hearing in the Levit case, supra, is now before us nor are we warranted in adopting the findings of fact made in that case as a basis for decision here. It is obvious that respondent has failed to sustain his burden of proof. The deficiencies determined by him, therefore, cannot be sustained. Uncontested adjustments in Docket No. 110977 make it necessary that a recomputation of the deficiency *473 be made in that proceeding. Decision will be entered for the petitioners in Dockets numbered 110974, 110975 and 110976 and under Rule 50 in Docket No. 110977. Footnotes
1. SEC. 275. PERIOD OF LIMITATION UPON ASSESSMENT AND COLLECTION. Except as provided in section 276 - (a) General Rule. - The amount of income taxes imposed by this title shall be assessed within three years after the return was filed, and no proceeding in court without assessment for the collection of such taxes shall be begun after the expiration of such period. * * *
(c) Omission From Gross Income. - If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 per centum of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 5 years after the return was filed.↩